UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
Terry S. Phillips, Melanie Mroz,

                    Plaintiffs,

                                      16 Civ. 295 (DAB)
                                      <u>MEMORANDUM & ORDER</u>

          v.

Uber Technologies, Inc.,

                    Defendant.
--------------------------------------------X
DEBORAH A. BATTS, United States District Judge.


     This Action involves a dispute between Uber Technologies,

Inc. ("Uber") and two of its riders over the alleged tortious

acts of one of Uber's drivers. Before the Court is Defendant's

Motion to Dismiss the Complaint pursuant to Rules 12(b)(6) and

12(b)(7). For the reasons stated below, Defendant's Motion to

Dismiss is GRANTED.

   I.   Background

        A. Facts

     Plaintiffs Terry Phillips and Melanie Mroz are private

citizens of Virginia and Texas respectively. (Compl. ¶¶ 1-2.)

Defendant Uber Technologies, Inc. is a Delaware corporation with

its principal place of business in California. (Id. ¶ 3.) The

Uber App is a software platform offered by Uber that connects

riders and drivers who are seeking transportation. After a rider

requests a ride, that request is routed to the nearest driver who is registered with the App. (Id. ¶ 8.)

### 1. Uber and its Drivers

In their Complaint, Plaintiffs allege that Uber's drivers are at-will employees of the company. They claim that Uber recruits, vets, selects, and controls the actions of its drivers by, inter alia, supplying an Uber phone to its drivers, implementing detailed policies and procedures for its drivers, and imposing restrictions on the acceptance of rides outside of the App. (Id. ¶ 5.) They also allege that Uber and its drivers sign what they call a "Partnership Agreement." (Id.) The Agreement, however, which is entitled "Software License and Online Services Agreement," states that the "relationship between the Parties is solely that of an independent contracting parties." (Dkt. 6-1 ¶ 7.1.) It notes the "Parties expressly agree that this Agreement is not an employment agreement or employment relationship. . . . The Parties expressly agree that no joint venture, partnership, employment, or agency relationship exists between you, Uber or any third party provider . . . . The Transportation Company acknowledges and agrees that it has no authority to bind Uber and undertakes not to hold itself out and to ensure that the Driver does not hold

himself or herself out, as an employee, agent or authorized representative of Uber." (Id. ¶¶ 7.2-7.4)

### 2. The December 2014 Incident

On December 10, 2014, Mr. Phillips and Ms. Mroz were in New York on business. Mr. Phillips ordered an Uber ride through the Uber App. Allaoua Chatouk accepted the ride request and picked up Plaintiffs. (Compl. ¶ 13.)

According to Plaintiffs, after transporting them to their requested location, Mr. Chatouk attempted to charge Mr. Phillips for both the Uber fare and a taxi fare. (Id. ¶ 15.) After Mr. Phillips refused to pay for both fares, Plaintiffs allege Mr. Chatouk "became agitated and threatened to not let Terry and Melanie exit the car and to return to the pickup location." (Id. ¶ 16.) Allegedly, Mr. Phillips then exited the car, but Mr. Chatouk sped away with Ms. Mroz trapped in the back seat. Mr. Phillips alleges he ran towards the car, and Mr. Chatouk then made a high-speed U-Turn on 57th Street, speeding back towards Mr. Phillips who fell to the ground so as to avoid being run over by the car. After being allegedly "thrown around" in the vehicle, Ms. Mroz begged the driver to stop and offered to pay him whatever he wanted. Mr. Chatouk drove on and made several more high-speed U-Turns with Ms. Mroz in the back seat. The car eventually stopped and Ms. Mroz was able to exit the car. (Id.)

Plaintiffs further allege that they began to walk down the street, but Mr. Chatouk chased after them on foot. (Id. ¶ 17.) Mr. Chatouk kept chasing after Plaintiffs, yelling and cursing obscenities at them. Plaintiffs were forced to "duck into a local hotel with a doorman to get away from the Uber driver." (Id. ¶ 18.)

Plaintiffs waited inside the hotel for a period of time. Mr. Phillips "thought enough time had gone by that he and Melanie could safely leave the hotel." (Id. ¶ 19.) However, Mr. Chatouk was waiting for them outside. Mr. Chatouk had obtained a large umbrella, which according to Plaintiffs, Uber required him to have in his car. (Id. ¶ 20.) Mr. Chatouk struck Mr. Phillips directly in the face with the umbrella and hit him in the lips, causing his lips to swell and bleed and become enmeshed in his teeth. (Id. ¶¶ 21-22.)

Mr. Phillips claims he suffered substantial pain throughout the entire incident, including contusions to his face and body. He was taken to a hospital for treatment. (Id. ¶ 23.) He incurred ambulance bills, hospital bills, and medical bills with his local doctor in Virginia. (Id. ¶ 26.)

After the incident, Mr. Chatouk was arrested. (Id. ¶ 24.)

Mr. Phillips reported the matter to Uber's Community Operation Manager, "Cat," who according to Plaintiffs, confirmed that Chatouk was an Uber driver at the time of the assaults and battery on Plaintiffs. (<u>Id.</u> ¶ 27.) Uber terminated its relationship with Mr. Chatouk. (<u>Id.</u> ¶ 28.)

B. Procedural History

On August 15, 2015, Plaintiffs filed a Complaint in the Circuit Court for the County of Chesterfield, Virginia against Uber alleging assault, battery, and false imprisonment. Plaintiffs sought compensatory and punitive damages, as well as pre- and post-judgment interest, attorney's fees, and costs. Mr. Chatouk was not named as a Defendant in the Complaint. (Compl. at 9-12.)

Uber removed the case to the Eastern District of Virginia and subsequently moved to dismiss the Complaint on September 16, 2015, pursuant to Rules 12(b)(6) and 12(b)(7). (Def.'s Mot. to Dismiss, dkt. 5 ("Def.'s Mot.").) In a separate Motion on the same day, Defendant filed a Motion to Transfer Venue to the Southern District of New York. (Def.'s Mot. to Transfer Venue, dkt. 3.)

Before the Motion to Dismiss was ruled on, the United States District Court for the Eastern District of Virginia

granted Defendant's Motion to Transfer Venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) on January 13, 2016. (Dkt. 15.)

Before this Court is Defendant's Motion to Dismiss pursuant to Rules 12(b)(6) and 12(b)(7). (Def.'s Mot.) Uber argues that it cannot be liable for the torts of Mr. Chatouk under a respondeat superior or partnership theory because Mr. Chatouk was never Uber's employee or partner. Regardless, Defendant posits, his actions lie so far outside of any purported scope of employment that Uber should not be liable. (See generally id.) In the alternative, Defendant argues Plaintiffs' suit should be dismissed under 12(b)(7) because Mr. Chatouk is a necessary and indispensable party under Rule 19. (Id.)

## II. Discussion

### A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). As the Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it

asks for more than a sheer possibility that a
defendant has acted unlawfully. Where a complaint
pleads facts that are "merely consistent with" a
defendant's liability, it "stops short of the line
between possibility and plausibility of entitlement to
relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 556–57). "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (internal

quotation marks and citation omitted). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 557). The Supreme Court further stated,

In keeping with these principles a court considering a
motion to dismiss can choose to begin by identifying
pleadings that, because they are no more than
conclusions, are not entitled to the assumption of
truth. While legal conclusions can provide the
framework of a complaint, they must be supported by
factual allegations. When there are well-pleaded
factual allegations, a court should assume their
veracity and then determine whether they plausibly
give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must

accept as true all factual allegations set forth in the

complaint and draw all reasonable inferences in favor of the

plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508

n.1 (2002); <u>Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," <u>Iqbal</u>, 556 U.S. at 678, which, like the complaint's "labels and conclusions," <u>Twombly</u>, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. (<u>quoting</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the Complaint, documents attached to the Complaint as exhibits, and documents incorporated by reference in the Complaint. <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

B. Choice of Law

This case was transferred from the Eastern District of Virginia to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (<u>See</u> dkt. 15.) In <u>Van Dusen v. Barrack</u>, the Supreme Court held that when a civil suit brought before a federal court on the basis of its diversity jurisdiction is transferred from one District Court to another pursuant to § 1404(a), the transferee forum must apply the law of the transferor forum. <u>See</u> 376 U.S. 612, 639 (1964) ("We conclude, therefore, that in cases such as the present, where the

8

defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."). Thus, Virginia state common law will guide this Court's analysis.[1]

As the forum state, Virginia's choice-of-law rules apply. In Virginia tort actions, Virginia applies the doctrine of lex loci delicti, "meaning the law of the place of the wrong governs all matters related to the basis of the right of action." Dreher v. Budget Rent-A-Car Sys., Inc., 634 S.E.2d 324, 327 (Va. 2006); see also Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993) (noting that lex loci delicti is "the settled rule in Virginia"); Millan v. McMillan, 253 S.E.2d 662, 663-64 (Va. 1979) (specifically rejecting other choice-of-law doctrines, including the most significant relationship and center of gravity tests).

According to Plaintiffs' Complaint, all actions relating to their claims for battery, assault, and false imprisonment took

---

[1] In the Second Circuit, however, Van Dusen does not apply to questions of federal law (and procedure). The transferee court applies its own case law on federal questions. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) ("We have previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit.").

place in New York. This Court will therefore apply New York law in evaluating Plaintiffs' tort claims.

C. Employee / Independent Contractor

Defendant Uber first moves to dismiss under 12(b)(6) claiming that Uber is not vicariously liable for the intentional torts of Mr. Chatouk under respondeat superior. According to Uber, Mr. Chatouk is not Uber's employee, but instead is an independent contractor.

Generally, an employer who hires an independent contractor, as distinguished from an employee, is not liable for that individual's negligent or tortious acts. See Sanabria v. Aguero-Borges, 986 N.Y.S.2d 553, 554 (N.Y. 2014) (citing Kleeman v. Rheingold, 81 N.Y.2d 270, 273 (N.Y. 1993)). "Control of the method and means by which the work is to be done is the critical factor in determining whether one is an independent contractor or an employee for purposes of tort liability." Id. at 554 (citing Begley v. City of New York, 972 N.Y.S.2d 48 (N.Y. 2013)). "Factors relevant to assessing control include whether a worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." Id. at

555 (citing <u>Hernandez v. Chefs Diet Delivery, LLC</u>, 915 N.Y.S.2d 623 (N.Y. App. Div. 2011)).

In its Motion to Dismiss, Defendant argues that it never had an employer-employee relationship with Mr. Chatouk, as evidenced by its agreement with Mr. Chatouk (expressly disclaiming such a relationship) and the fact that Uber had no control over the amount of hours Mr. Chatouk worked. Defendant also notes that Mr. Chatouk received no fringe benefits, was free to work for other companies, was not on Uber's payroll, and did not work on a fixed schedule. (<u>See</u> Def.'s Mot. at 8-12.) Plaintiffs counter that Uber did exercise control over Mr. Chatouk because it performed background checks before hiring him, "facilitated" his actions by providing a phone and App, and forced him to follow to detailed rules and procedures while driving. Plaintiffs allege Uber imposed limits on Mr. Chatouk's acceptance of rides, calculated fares, and could terminate him at will. (Pl.'s Opp. to Def.'s Mot. to Dismiss at 19-20, dkt. 7 ("Pl.'s Opp.").)

Despite the parties' arguments, under New York case law, the determination of whether an individual should be classified as an employee or independent contractor is fact intensive, and is premature at the Motion to Dismiss, pre-answer stage. In <u>Connor v. Pier Sixty, LLC</u>, the New York Supreme Court

specifically noted that such determinations are done at the Summary Judgment stage:

> The problem with the defendants' motion is that it is brought as a motion to dismiss for failure to state a cause of action. . . . Indeed, Bynog[v. Cipriani Group, 770 N.Y.S.2d 692 (N.Y. 2003), where the Court of Appeals made an independent contractor/employee determination], involved not a motion to dismiss but a motion for summary judgment. . . . The defendants have not cited any case where such a factual assessment has been made on a preanswer motion to dismiss for failure to state a cause of action. . . . The extent of this control is a matter which should be explored in discovery and is not an issue which is amenable to a motion to dismiss for failure to state a cause of action.

870 N.Y.S.2d 899, 901 (N.Y. Sup. Ct. 2009).

This is also true under federal common law. See, e.g., Pilyavsky v. U.S. Dep't of Justice, No. 05 CIV. 2920 (DC), 2006 WL 536635, at *6 (S.D.N.Y. Mar. 6, 2006) ("Here, without a fully developed factual record it is simply impossible for the Court to make a determination as to the presence or absence of each of the Reid factors. . . . If, as seems possible, it is revealed after discovery that a factfinder applying the Reid factors could only reasonably find that Pilyavsky was an independent contractor, the complaint may be dismissed at the summary judgment stage."); see also Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 680 (S.D.N.Y. 2009) ("Whether Fowler was, as a matter of law, an employee or an independent contractor, cannot be conclusively determined on the face of the Complaint.").

Therefore, the Court finds it premature at this point to make a finding based the limited record before it. The allegations in Plaintiffs' Complaint, as well as the agreement between Mr. Chatouk and Uber, are insufficient alone legally to establish control indicative of an employment relationship. Cf. Connor, 870 N.Y.S.2d at 901 ("Certainly, the nine-paragraph affidavit of Doug Giordano, the general manager of defendant Pier Sixty, LLC, is insufficient to legally establish the defendants' lack of control.").

D. Respondeat Superior

Nevertheless, the Court finds that it need not make a determination on whether Mr. Chatouk should be classified an employee or independent contractor, because even assuming that Mr. Chatouk were an employee of Uber, his actions are so far outside the scope of employment that no reasonable employer, or Court for that matter, could have anticipated them. Thus, Plaintiffs' Complaint would be dismissed regardless of whether Mr. Chatouk were classified as an employee or independent contractor.

Under the doctrine of respondeat superior, an employer may be liable for the torts of its employee so long as the employee was acting "within the scope of employment." Judith M. v. Sisters of Charity Hosp., 93 N.Y.2d 932, 933 (N.Y. 1999).

"Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." Id. (citing Riviello v. Waldron, 47 N.Y.2d 297, 304 (N.Y. 1979)). If the employee "for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable." Id. (citation omitted).

In order to determine whether an employee's acts fall within the scope of employment, New York Courts look to: "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." Riviello, 47 N.Y.2d at 303.[2]

---

[2] The Court acknowledges that "because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." Riviello 47 N.Y.2d at 303. "However, where a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." Haybeck v. Prodigy Servs. Co., 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (citing Rappaport v. Int'l Playtex Corp., 352 N.Y.S.2d 241 (N.Y. Sup. Ct. 1974)). In their papers, the parties do not dispute the actions of Mr. Chatouk.

As Defendant points out, Mr. Chatouk's tortious acts took place after he completed Plaintiffs' ride. (Compl. ¶ 15.)[3] Mr. Chatouk's dangerous driving occurred after the car had arrived at Plaintiffs' requested location, (Id. ¶ 16), and the alleged assault with an umbrella took place, in Plaintiffs' own words, after a "period of time." (Id. ¶ 19.) "[E]nough time" that Plaintiffs thought they "could safely leave the hotel." (Id.) Plaintiffs have also failed to allege facts that establish a history and practice between Mr. Chatouk and Uber. Plaintiffs speak nothing of how Uber trains its drivers to collect fares or how it hires its drivers in the first place.

More importantly, however, the Court finds that Mr. Chatouk's acts of assault, battery, and false imprisonment are not acts "commonly done" by taxi drivers, depart heavily from methods of normal performance, and could not have been reasonably anticipated by Uber.

New York Courts have long held that assaulting acts of employees are outside the scope of their employment. See Burlarley v. Wal-Mart Stores, Inc., 904 N.Y.S.2d 826, 827–28

---

[3] Plaintiffs attempt to argue that the ride was still ongoing when Mr. Chatouk attempted to charge them for an Uber fare and taxi fare. Yet the Complaint makes clear that the alleged assault, battery, and false imprisonment acts took place after the Plaintiffs had been transported to their requested location. (See Compl. ¶ 15 ("After transporting Terry and Melanie to the requested location, . . . . Chatouk attempted to charge Terry for both the Uber fare and a taxi fare.").)

(N.Y. 2010) ("In our view, Supreme Court properly concluded that throwing a full bag of heavy items at an unsuspecting customer's face as a 'joke' is not commonly done by a cashier and, indeed, substantially departs from a cashier's normal methods of performance."); Adams v. N.Y.C. Transit Auth., 626 N.Y.S.2d 455, 461 (N.Y. 1995) ("[I]t is clear that the sudden, inexplicable acts of Ms. Bowman could not have been controlled or foreseen by the Transit Authority. It is also clear that Ms. Bowman acted completely outside any possible definition of the scope of her employment which is primarily to sell tokens to commuters, and plaintiff has been unable to advance any interpretation of the facts to indicate otherwise."); Gibilaro v. Lomax Trading Corp., 253 N.Y.S.2d 888, 890 (N.Y. 1964) ("In our opinion, the evidence adduced failed as a matter of law to establish the fact or to provide a reasonable basis for the conclusion that, when Martinez assaulted the plaintiff, Martinez was acting within the scope of his employment or in furtherance of his employer's business interests."); Sauter v. N.Y. Tribune, 305 N.Y. 442, 444 (N.Y. 1953) ("Upon the evidence we are unable to agree with the courts below that, at the time of the assault at least at the time plaintiff was kicked in the face defendant-appellant's driver Finnegan was so engaged in the course of his employment and in the furtherance of his employer's business as to make defendant-appellant liable for the injuries inflicted upon

plaintiff."); <u>Oneta v. Paul Tocci Co.</u>, 67 N.Y.S.2d 795, 797–98
(N.Y. App. Div. 1947) ("Though Gordon was engaged in the
collection of the waste paper as required by his employer and
the use of the hand truck would have facilitated the removal of
the paper from the storeroom to the truck in the driveway, there
was nothing in the nature of Gordon's employment which required
that he use force."); <u>Troup v. Bovis Lend Lease LMB, Inc.</u>, 990
N.Y.S.2d 770, 777–78 (N.Y. Sup. Ct. 2014) (holding sudden
violent acts of employee could not have been reasonably
anticipated by employer and are outside scope of employment);
<u>see</u> <u>also</u> <u>N.X. v. Cabrini Med. Ctr.</u>, 97 N.Y.2d 247, 249–50, (N.Y.
2002) (finding doctor's sexual assault of patient to be outside
the scope of his employment and not reasonably foreseeable by
hospital); <u>Judith M.</u>, 93 N.Y.2d at 933 (finding same under
similar factual circumstances); <u>Steinborn v. Himmel</u>, 780
N.Y.S.2d 412, 414 (N.Y. App. Div. 2004) (finding scoutmaster's
sexual assaults "clearly outside the scope of his duties,"
"committed solely for personal reasons, and unrelated to the
furtherance of the employer's business" (quotation omitted)).

 Mr. Chatouk's acts departed substantially from normal
methods of driver performance. Plaintiffs allege that Mr.
Chatouk sped away "dangerously" from Plaintiffs' requested
location with Ms. Mroz trapped in the back seat. (Compl. ¶ 16.)

Mr. Chatouk then made a high speed U-Turn and sped towards Mr. Phillips, causing him to fall in the street to avoid being run over by the car. After Mr. Chatouk made several more U-Turns, Ms. Mroz was finally able to exit the car after pleading with Mr. Chatouk to let her out. (Id.) Mr. Chatouk then charged at Plaintiffs on foot yelling obscenities. (Id. ¶ 17-18.) Plaintiffs proceeded to hide inside a hotel for a period of time, though when they exited, Mr. Chatouk struck Mr. Phillips in the face with an umbrella, causing his lower lip to become enmeshed in his teeth and bleed. (Id. ¶ 19-22.) Mr. Chatouk was subsequently arrested. (Id. ¶ 24.)

Uber could not have anticipated that one of its drivers would have driven so dangerously, kept a passenger in the car against her will, attempted to run passengers over, and assaulted a passenger with an umbrella, making him bleed.[4] While it is true that Mr. Chatouk was attempting to collect a fare from an UberT ride, the Court does not believe that Mr. Chatouk's torts were related to his employment with Uber. There is "nothing in the nature of [Mr. Chatouk's] employment, which required that he use force." Oneta, 67 N.Y.S.2d at 797-98. Nor

---

[4] Plaintiffs have also failed to allege facts in their Complaint sufficient to support an inference that Uber could have anticipated that Mr. Chatouk would have acted in this manner. Plaintiffs point to the fact that Uber recommended that Drivers carry umbrellas in their cars. (Compl. ¶ 5.) Yet they speak nothing of how Mr. Chatouk used the umbrella as a weapon.

is force reasonably "within the discretionary authority afforded
[to] the employee." Lazo v. Mak's Trading Co., 84 N.Y.2d 896,
899 (N.Y. 1994) (Titone, A.J., concurring) (citing Sauter v.
N.Y. Tribune, 305 N.Y. 442, 445 (N.Y. 1953).

        In Sauter v. New York Tribune, the Court of Appeals
specifically rejected Plaintiff's argument that a paper delivery
driver who assaulted another driver was acting within the scope
of his employment and in "furtherance of defendant-appellant's
business or interest" because he was en route to deliver
newspapers. Sauter, 305 N.Y. at 445;[5] see also id. at 446 ("The
assault committed by the driver Finnegan accomplished nothing
which might be said to have benefited, or to have been intended
to benefit his employer."); Gibilaro, 253 N.Y.S.2d at 890
(declining to take Dissent's position that assaultive behavior
of employee furthered employers business interests because he
was trying to "enforce" purchase orders).

_____

[5] The Court also rejects Plaintiffs' comparison to Fenster v.
Ellis, 898 N.Y.S.2d 582 (N.Y. App. Div. 2010). In that case, a
driver failed to yield the right of way to Plaintiff and struck
her car. The Appellate Division found that the driver's employer
could be held liable under respondeat superior because, inter
alia, the driver was on the clock at the time. Because his
actions were "performed while the employee is engaged generally
in the business of his employer," they were "reasonably said to
be necessary or incidental to such employment." Fenster. 898
N.Y.S.2d at 584. However, unlike in the instant action, no
physical assault or extremely reckless driving occurred in
Fenster.

Thus, based on the facts alleged in Plaintiffs' Complaint, the Court finds that Mr. Chatouk's actions were clearly outside the scope of his employment, and that their Complaint should be dismissed pursuant to 12(b)(6).

E. Partnership

Plaintiffs also argue that Uber is liable for the torts of Mr. Chatouk because Mr. Chatouk and Uber are "partners" under New York Partnership Law. Yet this determination is appropriately made at the Summary Judgment stage as well. See, e.g., Cmty. Capital Bank v. Fischer & Yanowitz, 850 N.Y.S.2d 508, 510 (N.Y. App. Div. 2008) (making partnership determination at Summary Judgment stage); Rodman v. Reid & Priest, 562 N.Y.S.2d 55, 56 (N.Y. App. Div. 1990) (making partnership determination at Summary Judgment stage); Bianchi v. Midtown Reporting Serv., Inc., 959 N.Y.S.2d 788, 789 (N.Y. Sup. Ct. 2013) (same); see also Griffith Energy, Inc. v. Evans, 925 N.Y.S.2d 282, 283-284 (N.Y. App. Div. 2011) (making partnership determination after trial).

As Defendant notes, the New York Partnership Law defines a partnership as "an association of two or more persons to carry on as co-owners of a business for profit." N.Y. P'ship Law § 10 (McKinney 2017). "Relevant factors for the court to consider in determining whether a partnership existed include the intent of the parties, whether there was a sharing of profits and losses,

and whether there was joint control and management of the business." <u>Fasolo v. Scarafile</u>, 991 N.Y.S.2d 820, 822 (N.Y. Sup. Ct. 2014). Also relevant is mutual contribution of capital, "property, skill or knowledge." <u>Kyle v. Brenton</u>, 584 N.Y.S.2d 698, 699 (N.Y. Sup. Ct. 1992).

While "[n]o one factor is determinative," <u>id.</u>, Plaintiffs have failed to allege that <u>any</u> of these partnership factors are present between Mr. Chatouk and Uber.

F. 12(b)(7)

Defendant also moves to dismiss under 12(b)(7) for failure to join a necessary party under Rule 19. "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

Defendant argues that Mr. Chatouk is a necessary party because the allegations in Plaintiffs' Complaint "relate solely

to the alleged acts of Mr. Chatouk." (Def.'s Mot. at 15.)
Plaintiffs' counter that because Uber is "jointly and severally
liable for the intentional torts committed by Chatouk under the
doctrine of respondeat superior and under the Uniform
Partnership Act[,] Chatouk's presence is not necessary,
therefore, to accord Plaintiffs the relief requested in their
Complaint." (Pl.'s Opp. at 12.)

Yet the Court has not found Uber jointly and severally
liable for the torts of Mr. Chatouk under either a respondeat
superior or partnership theory. See supra sections II.D-II.E.

Additionally, dismissal of a case under 12(b)(7) is a "a
drastic remedy, . . . which should be employed only sparingly."
Teamsters Local Union No. 171 v. Keal Driveway Co., 173 F.3d
915, 918 (4th Cir. 1999); see also Am. Trucking Ass'n, Inc. v.
N.Y.S. Thruway Auth., 795 F.3d 351, 357 (2d Cir. 2015) ("Federal
courts are extremely reluctant to grant motions to dismiss based
on nonjoinder and, in general, dismissal will be ordered only
when the defect cannot be cured and serious prejudice or
inefficiency will result." (citing 7 Charles Alan Wright &
Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed.
2015)).

Because the Court has found supra that dismissal under
12(b)(6) for failure to state a claim is appropriate based on a
respondeat superior and/or a partnership theory, it need not

employ the drastic remedy that 12(b)(7) requires. This is
especially true given the limited record and facts known about
Mr. Chatouk—it is not abundantly clear where he may or may not
be subject to jurisdiction, which may greatly affect joinder
analysis.[6] See, e.g., Harty v. Spring Valley Marketplace LLC, No.
15-CV-8190 (NSR), 2017 WL 108062, at *13 (S.D.N.Y. Jan. 9, 2017)
("Ultimately, the Court finds that the parties have not created
an adequate evidentiary record on the issue of necessary parties
and is therefore unable to dismiss the action under Rule
12(b)(7) . . . .").

Accordingly, Plaintiffs' Complaint is dismissed on 12(b)(6)
grounds.[7] See Young-Wolff v. McGraw-Hill Cos., No. 13-CV-4372 KMW
JCF, 2014 WL 349711, at *8 (S.D.N.Y. Jan. 31, 2014) ("Because
the Court dismisses both claims under Rule 12(b)(6), it need not
address Defendant's motion to dismiss pursuant to Rule
12(b)(7)."); Pilchman v. Am. Fed'n of State, Cty. & Mun. Emps.,

---

[6] Uber alleges "on information and belief" that he is a citizen
of New York. (Def.'s Mot. at 2.). Yet Uber provides no evidence.
Mr. Chatouk could be a citizen of Virginia or Texas, thereby
destroying diversity jurisdiction. And even if Mr. Chatouk were
a citizen of New York, he was not originally subject to personal
jurisdiction in Virginia, where this action was initially filed.

[7] Notwithstanding, the Court acknowledges Uber's argument that
there may be prejudice to Mr. Chatouk by not naming him in this
action. Because the matter will center on whether he committed
the torts alleged in Plaintiffs' Complaint, that "he could be
deemed to have committed these tortious acts without the
opportunity to defend himself," may rise to the level of
prejudice. (Def.'s Mot. at 16.)

AFL-CIO, No. 10 CV 4976 KMW, 2011 WL 4526455, at *15 (S.D.N.Y. Sept. 29, 2011) ("Because the Court dismisses both claims on Rule 12(b)(6) grounds, it need not address the Unions' motion to dismiss pursuant to Rule 12(b)(7).").

G. Leave to Amend

A court "should freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (internal citations omitted).

Repleading would be futile when the "problem with [the pleader's] causes of action is substantive." See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Here, Plaintiff does not seek leave to replead. Dismissal without leave is appropriate given that repleading would not alter the Court's 12(b)(6) analysis: the actions of Mr. Chatouk alleged by Plaintiffs lie so far outside the scope of his purported employment that no reasonable employer could have anticipated them. Thus, "[t]he problem with [Plaintiffs'] causes of action is substantive; better pleading will not cure it." Id.

III. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED WITH PREJUDICE.

SO ORDERED.

Dated:     New York, New York
           June 14, 2017


                              _Deborah A. Batts_
                              **Deborah A. Batts**
                          **United States District Judge**